Erin Rose Ronstadt, SBN 028362
Kyle J. Shelton, SBN 027379
RONSTADT LAW, PLLC
P.O. Box 34145
Phoenix AZ 85067
Phone: (602) 615-0050
Fax: (602) 761-4443
erin@ronstadtlaw.com
kyle@ronstadtlaw.com

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| Lisa Becker, | No. |
|---|---|
| Plaintiff, | |
| v. | **COMPLAINT** |
| The Hartford Life and Accident Insurance Company, an ERISA benefit plan fiduciary, | |
| Defendant. | |

For her claims against The Hartford Life and Accident Insurance Company, an ERISA benefit plan fiduciary ("Hartford" or "Defendant"), Plaintiff Lisa Becker ("Ms. Becker" or "Plaintiff") alleges as follows:

## *Jurisdiction, Venue, and Parties*

1.   This action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA").

2.   The Group Long Term Disability Plan for Employees of Bank of America Corporation "Bank of America Group Benefits Program" ("The Plan"). The Plan is a purported ERISA benefit plan established and maintained by Bank of America for the benefit of its employees.

3.   Ms. Becker was a participant and beneficiary of the Plan as an employee of Bank of America.

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

1  4.  Hartford insured Bank of America employees for long-term disability ("LTD")

2  benefits pursuant to an insurance policy denoted by policy number 811383 (the "Policy").

3  5.  Hartford is a third-party claims administrator for LTD claims under the Plan.

4  6.  Hartford is a Plan fiduciary.

5  7.  Hartford has a duty to administer the Plan prudently and in the best interests of

6  all Plan participants and beneficiaries.

7  8.  Aetna used to fully insure LTD benefits under the Plan.

8  9.  Plaintiff is informed and believes that Hartford no longer fully insures LTD

9  benefits under the Plan.

10  10.  At the time Ms. Becker sought LTD benefits under the Plan, Hartford

11  administered claims for Bank of America under the Plan, acted on behalf of the Plan, and

12  acted as an agent of Bank of America and/or the Plan to make final decisions regarding the

13  payment of disability benefits for the Plan and to administer the Plan.

14  11.  Ms. Becker currently resides in Maricopa County, Arizona and has been a

15  resident of Maricopa County at all times since becoming a Plan participant.

16  12.  Ms. Becker is a citizen of the United States of America.

17  13.  Hartford has its principal place of business in the State of Connecticut.

18  14.  Defendant Hartford is licensed and authorized to do business in Maricopa

19
20  County, Arizona, and resides and is found within Maricopa County within the meaning of

21  the jurisdiction and venue provisions of ERISA, 29 U.S.C. § 1132 and 28 U.S.C. § 1391.

22  15.  This Court has jurisdiction over the subject matter of this action under ERISA,

23  29 U.S.C. §§ 1132(a), 1132(e)(1), and 28 U.S.C. §§ 2201-02 (declaratory judgments).

24  16.  Venue is proper in this Court under ERISA, 29 U.S.C. § 1132(e)(1) and 28

25  U.S.C. § 1391(b).

26  **GENERAL ALLEGATIONS**

27  17.  Ms. Becker suffers from multiple medical conditions which render her totally

28  disabled under the Plan, including Mast Cell Activation Syndrome ("MCAS"); Postural

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

Orthostatic Tachycardia Syndrome ("POTS"); orthostatic intolerance; joint hypermobility syndrome/Ehlers-Danlos Syndrome ("EDS"); spinal stenosis cervical region; left cervical radiculopathy; spondylosis of the lumbosacral region; chronic low back pain; fibromyalgia; chronic severe migraines; celiac disease; and irritable bowel syndrome ("IBS").

18. Her medical conditions cause a host of symptoms, which severely diminish her ability and capacity to work.

19. Ms. Becker's treating specialist physicians and other providers have verified and confirmed her medical conditions using objective examination findings and diagnostic testing.

20. Based on her collective medical conditions, Ms. Becker is Disabled and unable to perform her Own Occupation, or any Reasonable Occupation for that matter.

21. Ms. Becker worked as an Escalation Manager with Bank of America, which is a sedentary occupation.

22. Under the Policy, Disability is defined as follows: "From the date that you first become disabled and until monthly benefits are payable for 18 months, you will be deemed to be disabled on any day if: You are not able to perform the material duties of your own occupation solely because of disease or injury, and your work earnings are 80% or less of your adjusted predisability earnings."

23. "Own Occupation" is defined as "…the occupation that you are routinely performing when your period of disability begins. Your occupation will be viewed as it is normally performed, without regard to your specific reporting relationship, in the national economy instead of how it is performed for your specific employer at your location or work site."

24. "Reasonable Occupation" is defined as "…any gainful activity for which you are; or may reasonably become; fitted by: education; training; or experience; and which results in; or can be expected to result in; an income of more than 60% of your adjusted pre-disability earnings."

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

25. Ms. Becker applied for, received, and exhausted short-term disability benefits with Hartford before Hartford transitioned her claim to the LTD claims unit.

26. Hartford approved and paid for Ms. Becker's LTD claim benefits starting on November 7, 2013.

27. On April 10, 2017, the Social Security Administration ("SSA") awarded Ms. Becker's claim for Social Security Disability benefits ("SSDI").

28. Ms. Becker was approved for ongoing LTD benefits into the Any Occupation phase of Disability as early on May 6, 2015.

29. The Hartford referred Ms. Becker's claim to an independent medical examiner ("IME").

30. Hartford arranged to have Ms. Becker examined by Dr. Brian McCrary—a local physician notorious for his biased IME reports.

31. On May 27, 2020, Ms. Becker attended an IME with Brian McCrary, D.O., M.P.H.

32. Dr. McCrary has performed examinations at the behest of long-term disability insurance carriers for many years.

33. Upon information and belief, Dr. McCrary is a preferred source for these examinations because he consistently writes reports adverse to the interests of disability claimants.

34. Upon information and belief, in these reports, Dr. McCrary often accuses disability claimants of lying, malingering, or other deceitful behavior.

35. Hartford has a custom of using Dr. McCrary to generate evidence supporting the termination or limitation of LTD claims.

36. Dr. McCrary does not have the appropriate medical expertise to evaluate Ms. Becker's complex disabling medical conditions.

37. Unsurprisingly, Dr. McCrary concluded Ms. Becker had full-time physical work capacity, and concluding in his report Ms. Becker is not Disabled.

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

38. Dr. McCrary's opinions are patently belied by the objective record.

39. On June 23, 2020, Hartford issued a letter terminating Ms. Becker's LTD benefits based on a physical Disability (the "Denial").

40. Hartford based its decision in part on the opinions of Dr. McCrary IME report.

41. In reaching the Denial, Hartford failed to conduct a whole person analysis and improperly disregarded the medical evidence, including Ms. Becker's treating provider assessments.

42. On December 23, 2020, Ms. Becker, through counsel, notified Hartford of her appeal with the intent to supplement with additional evidence (the "Appeal").

43. Ms. Becker, through counsel, supplemented the Appeal with additional evidence including up-to-date medical records, Ms. Becker's Social Security Disability file, and an FCE Report dated November 10, 2020.

44. All of these reports supported Ms. Becker's ongoing physical Disability under the Plan.

45. The independent FCE concluded, based on a full battery of physical tests, that Ms. Becker could not perform her own past work or any other kind of sedentary work.

46. The functional evaluator's conclusions are based on several hours of objective testing.

47. The independent FCE examiner noted the "ongoing and debilitating symptoms" he previously outlined based on the results of his examination.

48. Research shows FCE findings are highly predictive of how an individual will perform in the world of work and, therefore, are relevant for predicting work function. Ms. Becker's FCE findings are reliable objective evidence of her lack of functional ability. Hartford must give significant weight to these findings.

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

49. On its LTD appeal review Hartford invited Ms. Becker to respond to the new, adverse evidence it created during the Appeal review. This included two medical file reviews conducted by reviewers Dr. Alfred Becker and Dr. David B. Hoenig.

50. On May 24, 2021 and June 29, 2021, Ms. Becker responded to Hartford's adverse evidence on appeal including new medical records as well as a neurosurgical consult from Dr. Byron Willis from Arizona Neurosurgery & Spine Specialists.

51. Notwithstanding Ms. Becker's worsening cervical and lumbar spine degenerative disc disease, Ms. Becker cannot be denied benefits for attempting to continue work through her disability by finding ways to mask its effects, and perhaps even doing so successfully enough to not be reprimanded by her superiors. *See Nieves v. Prudential Ins. Co. of Am.*, 233 F. Supp. 3d 755, 761 (D. Ariz. 2017) (citing *Hawkins v. First Union Corporation Long Term Disability Plan*, 326 F.3d 914, 918 (7th Cir. 2003) (there is no "logical incompatibility" between working full time and being disabled from working full time" as "a desperate person might force himself to work despite an illness that everyone agreed was totally disabling"); *Wilcox v. Sullivan*, 917 F.2d 272, 277 (6th Cir. 1990) (a claimant "should not be penalized because he had the courage and determination to continue working despite his disabling condition"); *General American Life Ins. Co. v. Yarbrough*, 360 F.2d 562, 566 (8th Cir. 1966) ("the mere fact that the insured performs certain labor, when common care and prudence require otherwise, does not of itself demonstrate a lack of total disability")).

52. Drs. Becker and Hoenig failed to consider Ms. Becker's treating provider assessments. Ms. Becker's treating providers have continuously concluded that she is Disabled.

53. A plan administrator "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *See Black & Decker Disability v. Nord*, 538 U.S. 822, 834, 123 S. Ct. 1965, 155 L. Ed. 2d 1034 (2003).

54. Further, Drs. Becker and Hoenig noted they reviewed the previous medical file reviewer reports. Allowing peer reviewers to influence each other effectively

-6-

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

1 reduces the independence of their respective reports. When peer reviewers share their bias,
2 they tend to make similar errors. This is yet another example of how Hartford has failed to
3 conduct a full and fair review.

4 55. On August 25, 2021, Hartford finally upheld its decision to limit benefits
5 under the policy (the "Final Denial").

6 56. In reaching the Final Denial, Hartford relied heavily on the peer reviewers'
7 erroneous and biased reports.

8 57. Hartford's reliance on the peer reviewers was an abuse of discretion and
9 contrary to its duty to perform a full and fair review.

10 58. In its Final Denial, Hartford failed to properly consider the FCE findings.

11 59. Ms. Becker cannot perform the material duties of her Own Occupation or any
12 Reasonable Occupation and therefore comes within the definition of Disability under the
13 Plan.

14 60. Ms. Becker exhausted her administrative remedies and timely filed this lawsuit.

## COUNT I
### (Recovery of LTD Plan Benefits)
### (Hartford)

61. All other paragraphs are incorporated by reference.

62. The Plan is an Employee Welfare Benefits Plan as defined by ERISA, 29
U.S.C. § 1002.

63. The Plan represents LTD coverage and a promise to provide LTD benefits
until Ms. Becker is no longer Disabled under the terms of the Plan.

64. Ms. Becker continues to be Disabled from her Own Occupation or any
Reasonable Occupation according to the terms of the Plan.

65. Ms. Becker has claimed the benefits under the Plan to which she is entitled.

66. Ms. Becker reasonably expected her medical conditions met the requirements
of Disability as defined by the Plan and she would receive benefits under the Plan until

-7-

**RONSTADT LAW, PLLC**
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

1    she reaches her Normal Retirement Age, which is age 67, or until she was no longer

2    Disabled.

3    67.    Despite the coverage of Ms. Becker's Disability, Hartford and the Plan

4    improperly limited LTD benefits in breach of the Plan and ERISA.

5    68.    Hartford's conduct was arbitrary, capricious, an abuse of discretion, not

6    supported by substantial evidence, and clearly erroneous.

7    69.    Hartford inappropriately conducted surveillance on Ms. Becker and

8    misconstrued the findings of that surveillance in bad faith.

9    70.    Hartford repeatedly ignored or played down the substantial objective

10    evidence Ms. Becker submitted supporting her ongoing physical Disability, including the

11    opinions of her longstanding treating physicians and independent experts.

12    71.    Hartford failed to properly consider the opinions of Ms. Becker's treating and

13    examining physicians and providers.

14    72.    Hartford failed to adequately explain why it credited their physician-reviewers

15    and examiners over Ms. Becker's treating physicians and independent experts.

16    73.    Upon information and belief, Hartford used in-house reviewers and contract

17    consultants in evaluating Ms. Becker's claim because it knew that these reviewers' and

18    consultants' recommendations would be unfavorable for the continuation of Ms. Becker's

19    benefits.

20    
21    74.    The peer reviewers and independent examiner Hartford relied upon

22    arbitrarily reached their opinions based on insufficient evidence or investigation.

23    75.    Hartford intentionally gathered evidence to stack the deck in its favor and

24    against Ms. Becker.

25    76.    Hartford did not properly consider all of the available evidence when

26    terminating Ms. Becker's benefits.

27    77.    Drs. Becker and Hoenig, Hartford's physician peer reviewers during the

28    process, both arbitrarily dismissed the FCE findings despite the FCE examiner's

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

conclusions that the FCE results were valid and Ms. Becker provided full effort during testing.

78.   Hartford's consultants had no legitimate basis to discredit the FCE, but they did so anyway.

79.   Hartford failed to conduct a full and fair review.

80.   Hartford misstated medical evidence for its own financial benefit, e.g., it excessively relied on biased medical reviews provided by in-house medical consultants or outside consultants it routinely contracts with through third-party intermediaries, such as the RRS Medical.

81.   In the end, Hartford relied exclusively on the opinions of its own experts, all of whom, save one, never personally examined or even spoke to the claimant.

82.   Hartford's lone examiner, Dr. McCrary is a biased IME consultant who is notoriously anti-claimant.

83.   Although the Policy states Hartford has discretion with respect to claims and appeals and to interpret the Plan, under ERISA, this can only be true if the Plan reserved that discretion to the Plan Administrator, the Plan terms provide a mechanism for the Plan Administrator to delegate the discretion, and there is evidence the discretion was delegated in accordance with the terms of the Plan.

84.   Even if Bank of America properly delegated discretionary authority to Hartford, in light of Hartford's wholesale and flagrant procedural violations of ERISA, Ms. Becker should be entitled to de novo review. *See Halo v. Yale Health Plan*, 819 F.3d 42, 60-61 (2d Cir. 2016) ("when denying a claim for benefits, a plan's failure to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503-1, will result in that claim being reviewed de novo in federal court, unless the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent and harmless.")

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

85.   Instead of evaluating a participant's eligibility based on the applicable plan language and medical evidence, Ms. Becker is informed and believes Hartford makes claims decisions based on the claims resources and financial risk it faces on certain claims.

86.   Hartford routinely emphasizes information that favors a denial of benefits while deemphasizing other information that suggests a contrary conclusion.

87.   Hartford routinely denies or limits otherwise compensable claims to avoid setting aside additional reserves. To accomplish this goal, it "investigates" claims for the purpose of creating biased evidence to justify a denial or a limitation of benefits. It does this, in part, by determining segmentation or classification to pre-determine its financial exposure.

88.   The practice of segmentation helped Hartford increase its profitability.

89.   On information and belief, Hartford decides in advance how long claims should be paid, often to the test change or change in definition of Disability under a Policy, and then takes claims management measures to ensure those goals are met.

90.   Hartford relied on findings that constitute "clearly erroneous findings of fact" to deny Ms. Becker's benefits.

91.   Hartford abused its discretion by basing its decision on unreliable and inaccurate information. When confronted with this knowledge, Hartford ignored the inaccuracies or created new reasons for denial.

92.   Upon information and belief, Hartford provided its reviewers and vendors with internal notes and financial information about the claim, compromising their ability to make "independent" medical determinations and creating further bias in reviews.

93.   In limiting Ms. Becker's LTD benefits under the Policy, Hartford disregarded evidence Ms. Becker's conditions had not changed or improved.

94.   Hartford has no evidence Ms. Becker's conditions changed or improved since it determined she was physically Disabled under the LTD Policy.

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

95. Hartford engaged in other procedural irregularities, which it did to serve its own financial best interests.

96. Hartford's failure to comply with ERISA's disclosure requirements and poor management of the file demonstrate its abuse of discretion and improper claims handling.

97. On information and belief, Hartford engaged in claim discussions to decide the directions of appeals without having reviewed all of the medical evidence, demonstrating its predetermined path of terminating benefits.

98. Ms. Becker alleges upon information and belief that Hartford has a parsimonious claims handling history.

99. Hartford failed to conduct a "meaningful dialogue" regarding Ms. Becker's claim.

100. Although Hartford routinely shared the findings of its peer reviewing physicians with Ms. Becker under the guise of having a "meaningful dialogue," Hartford would routinely rely on its own evidence without duly considering the opinions of Ms. Becker's treating physicians.

101. The evidence submitted with Ms. Becker's Appeal addressed the opinions of Hartford's consultants, but Hartford ignored Ms. Becker's evidence.

102. Under the de novo standard of review, to be entitled to benefits, Ms. Becker need only prove by a preponderance of the evidence she is Disabled.

103. Even under the abuse of discretion standard of review, Hartford abused its discretion, because its decision limiting Ms. Becker's disability benefits was arbitrary and capricious and caused or influenced by Hartford's, its reviewing physicians', and its vendors' financial conflicts of interest. These conflicts of interest precluded the full and fair review required by ERISA, 29 U.S.C. 1133(2) and 29 C.F.R. § 2560.503-1(g)(1) and (h)(2).

104. Ms. Becker is entitled to discovery regarding the effects of the procedural irregularities and structural conflict of interest that infiltrated the claims handling process,

**RONSTADT LAW, PLLC**
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

1  and also regarding the effects of Hartford's reviewing physicians', its employees', and its

2  vendors' financial conflicts of interest, biases, and motivations on the decision limiting

3  Ms. Becker's LTD claim.

4  105.  Under the de novo standard of review, Ms. Becker is entitled to discovery

5  regarding, among other things, the credibility of Hartford's medical reviews and

6  Hartford's lack of partiality due to its financial conflicts of interest. *Opeta v. Nw. Airlines*

7  *Pension Plan for Contract Employees*, 484 F.3d 1211, 1217 (9th Cir. 2007) (under the de novo

8  standard of review, new evidence may be admitted regarding, among other things: "the

9  credibility of medical experts… [and] instances where the payor and the administrator are

10  the same entity and the court is concerned about impartiality" (*quoting Quesinberry v. Life*

11  *Ins. Co. of N. Am.*, 987 F.2d 1017, 1026-27 (4th Cir. 1993)).

12  106.  Pursuant to the coverage provided in the Plan, to ERISA 29 U.S.C. §

13  1132(a)(1)(B), and to applicable federal law, Ms. Becker is entitled to recover any benefits

14  due under the terms of the Plan, and to enforce her rights under the Plan.

15  107.  Ms. Becker is entitled to reinstatement of and ongoing entitlement to any

16  other employee benefits that could be terminated, discontinued, or suspended as a result

17  of the termination of her disability benefits. She is entitled to a restoration of the status

18  quo ante before Hartford wrongfully limited LTD benefits.

19  108.  Pursuant to 29 U.S.C. § 1132(g), Ms. Becker is entitled to recover her

20  attorneys' fees and costs incurred herein.

21  109.  Ms. Becker is entitled to prejudgment interest on the benefits to which she is

22  entitled and on her damages at the highest legal rate until paid.

23  **WHEREFORE**, on all claims, Ms. Becker prays for entry of judgment against

24  Defendants as set forth in this Complaint, which includes:

25  A.  Any past LTD benefits under the terms of the Plan;

26  B.  Clarifying and determining Ms. Becker's rights to future benefits under the

27  terms of the Plan;

**RONSTADT LAW, PLLC**
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

C.    For any other benefits Ms. Becker may be entitled to receive under the Plan due to her Disability;

D.    An award of Ms. Becker's attorneys' fees and costs incurred herein;

E.    An award of prejudgment interest on benefits and damages at the highest legal rate until paid; and

F.    For such and further relief as the Court deems just, equitable, and reasonable.

Dated this 14th day of March 2022.

RONSTADT LAW, PLLC

By: *s/ Erin Rose Ronstadt*
    Erin Rose Ronstadt
    Kyle J. Shelton
    Attorneys for Plaintiff